UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SCHOTT AG, as the successor to : 
DEUTSCHE SPEZIALGLAS AG, a : Case No. _____
foreign corporation, :
       Plaintiff :
:
v. :
:
KOPP GLASS, INC., :
:
       Defendant :

## COMPLAINT IN REPLEVIN

Plaintiff Schott AG, as the successor by merger to Deutsche Spezialglas AG, brings this action in replevin to recover possession of certain molds and lab equipment which are the property of Schott, AG and which are being wrongfully detained by the defendant, Kopp Glass, Inc. ("Kopp"), as more particularly stated below.

### The Parties

1. Schott AG ("Schott") is a corporation organized under the laws of Germany, with its principal place of business at 10 Hattenbergstrasse, Mainz, Germany D-55122. Schott is the successor by merger to Deutsche Spezialglas AG ("DESAG"), which was located at the same address. Schott is an international manufacturer of glass and glass-ceramics.

2. Kopp is a Pennsylvania business corporation whose principal place of business is l at 2108 Palmer Street, Pittsburgh, Pennsylvania 15218. Kopp is in the business of manufacturing hand-molded, technical glass for a variety of industrial, and commercial applications.

### Jurisdiction and Venue

3. This Court has diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2) because Schott is a citizen of a foreign state, Kopp is a citizen of the Commonwealth of Pennsylvania and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

{V0433171.1}

4. Venue is proper in this judicial district pursuant to a forum selection provision in an April 1, 1997 Glass Products Supply Agreement ("GPSA") by and between DESAG and Kopp, a true and correct copy of which is attached to this Verified Complaint as **Exhibit A**. Under Section 16.2 of the GPSA, the parties "irrevocably submit[ted] to the jurisdiction of any State of New York" or "Federal court sitting in the State of New York" for any dispute "arising out of or relating to" the GPSA. Ex. A, at ¶ 16.2.

### Material Facts

#### A. *The Glass Products Supply Agreement ("GPSA")*

5. On April 1, 1997, DESAG and Kopp entered into the GPSA under which: Kopp agreed to supply DESAG and certain DESAG affiliates with their requirements of certain products on the terms and conditions set forth in the GPSA; and DESAG and certain DESAG affiliates agreed to purchase their requirements of certain products from Kopp on the terms and conditions set forth in the GPSA.

6. As the successor by merger to DESAG, Schott is subject to and may enforce the terms and conditions of the GPSA.

7. The "Products" that DESAG agreed to purchase from Kopp and that Kopp agreed to supply to DESAG under the GPSA included "molded lenses for applications in the field of signal optics, general and technical lighting fixtures and medical lighting fixtures." Ex. A, at ¶ 1.5. Under the GPSA, the "Products" is defined to include both "Exclusive Products" and "Nonexclusive Products," as those terms are defined in Sections 1.3 and 1.4. Ex. A, at ¶ 1.5.

8. The GPSA defines "Exclusive Products" as "those glass products listed on Appendix A to this Agreement, as amended from time to time by mutual agreement of the parties,

manufactured and sold by Kopp exclusively to DESAG hereunder using the DESAG molds identified on Appendix B." Ex. A, at ¶ 1.3.

9. Upon commencement of performance under the GPSA, Schott provided molds to Kopp to manufacture the lenses, as described in Appendix B to the GPSA. Over the years, as molds were worn out, Schott paid for replacement molds which were used by Kopp for the same purpose.

10. Upon commencement of performance under the GPSA, Schott provided Photometric Lab Equipment, described in Appendix C to the GPSA, for Kopp to use exclusively in the manufacture of the lenses for Schott.

11. The GPSA defines "Nonexclusive Products" as "those glass products which are sold by Kopp in the normal course of business also to parties other than DESAG." Ex. A at 1.4. This lawsuit relates solely to DESAG-owned equipment used to manufacture and test the Exclusive Products.

12. Under Section 2.6 of the GPSA, entitled "Exclusive Products Availability," Kopp acknowledged "that it has loaned to Kopp the assets and permitted it access to the intellectual property necessary to manufacture Exclusive Products and Kopp acknowledges that DESAG is dependent upon Kopp for such Exclusive Products during the Term." Ex. A, at ¶ 2.6.

### *The Molds*

13. Section 2.6 of the GPSA further states that Kopp acknowledged "that DESAG's molds and specifications (including but not limited to dimensions, compositions, tolerances and surface tensions) for the Exclusive Products constitute Proprietary Information owned by DESAG." Ex. A, at ¶ 2.6.

14. Under the plain language of Section 2.6 of the GPSA, Schott, as the successor to DESAG, is the rightful owner of the molds and specifications that it provided to Kopp to enable Kopp to manufacture molded lenses exclusively for Schott.

15. Under Section 2.8 of the GPSA, entitled "Exclusive Products Molds," DESAG agreed to "permit Kopp to make use of the molds identified in Exhibit B ('Molds') only for the manufacture of the Exclusive Products for DESAG." Ex. A, at ¶ 2.8.

16. Section 2.8 of the GPSA further states that "KOPP is prohibited from making any other use of the Molds and DESAG specifically retains all right, title and interest in the Molds ... Upon the expiration or termination of [the GPSA], as mutually determined by the parties hereto, Kopp shall either (a) return the Molds to DESAG or (b) scrap the Molds in accordance with DESAG's instructions." Ex. A, at ¶ 2.8.

17. Section 6.1 of the GPSA states that "[o]wnership of the molds and the know-how, technology, trademarks and patents for making and selling Products from KOPP's Pittsburgh Facility shall, to the extent they have derived from DESAG, reside with DESAG." Ex. A, at ¶ 6.1. In accordance with the plain language of Section 2.8 of the GPSA, Schott has the right of possession of the molds.

### The Lab Equipment

18. Under Section 2.11 of the GPSA, entitled "Photometric Lab Equipment," DESAG agreed to "permit Kopp to make use of the Photometric Lab Equipment identified in Appendix C ('Lab Equipment') only for the manufacture of the Exclusive Products for DESAG." Ex. A, at ¶ 2.11. Set forth in Appendix C to the GPSA is a description of the photometric lab equipment that DESAG permitted Kopp to use in accordance with Section 2.11. Ex. A, at 33-34. This equipment

was used to test the Exclusive Products to assure that they meet the specifications required by Schott.

19. Section 2.11 of the GPSA further states that "Kopp is prohibited from making any other use of the Lab Equipment and DESAG specifically retains all right, title and interest in the Lab Equipment ... Upon expiration or termination of [the GPSA], as mutually determined by the parties hereto, Kopp shall either (a) return the Lab Equipment to DESAG in the same condition that it was received, normal wear and tear excepted or (b) scrap the Lab Equipment in accordance with DESAG's instructions." Ex. A, at ¶ 2.11.

20. In accordance with the plain language of Section 2.11 of the GPSA, Schott, as the successor to DESAG, is the rightful owner of, and has the right to take possession of, the lab equipment identified and described in Appendix C to the GPSA, which it provided to Kopp pursuant to the terms and conditions of the GPSA.

### *Expiration of Term of GPSA and What Followed*

21. The Term of the GPSA was "a period of five (5) years," which began on April 1, 1997, the "Closing Date." Ex. A, at ¶¶ 1.1, 1.7. Under Section 1.7, the GPSA would "be extended for additional successive two (2) year terms in the event that neither party gives the other written notice of its desire to terminate the Agreement at least twenty-four (24) months before the end of the initial Term or applicable extension." Ex. A, at ¶ 1.7.

22. On June 10, 2002, after the extension of the GPSA for a two-year term upon the expiration of the initial five-year term contemplated by Section 1.7, Schott provided written notice to Kopp of its desire to terminate the GPSA. A true and correct copy of this notice which is attached to this Verified Complaint as **Exhibit B**. Accordingly, pursuant to Section 1.7, the GPSA terminated on or about March 31, 2004.

23. Paragraph 10.3 of the GPSA states that "[t]he obligations of the parties under Sections 2.8, 5.1, 6.1 and 15.1 and Article IX and XIV shall survive the expiration or termination of this Agreement." Ex. A, at ¶ 10.3

24. After the termination of the GPSA, Schott and Kopp continued for nearly 13 years to manufacture and sell, on the part of Kopp, and to purchase and accept delivery of, on the part of Schott, molded glass lenses, operating in a similar manner as they had before termination of the GPSA and in accordance with the terms and conditions of the GPSA.

### *Kopp Refuses to Return Molds and Lab Equipment*

25. In early 2017, Schott discontinued purchasing lenses from Kopp. Schott requested that Kopp return to Schott the molds that it had paid for over the years, and the lab equipment that DESAG had provided to Kopp and had permitted Kopp to use to enable it to manufacture and test lenses exclusively for Schott, in accordance with the terms and conditions of the GPSA.

26. The lab equipment that Schott requested Kopp to return was paid for by DESAG and/or Schott and Kopp was obligated under Section 2.11 of the GPSA to return that equipment to Schott after termination of the agreement. Kopp has no current right to maintain possession of the lab equipment.

27. The molds that Schott asked Kopp to return are molds that were paid for by Schott. Kopp maintained and repaired the molds in accordance with Section 2.8 of the GPSA, with the cost of such maintenance and repair included in the price of the products, as provided for in section 2.8. Kopp does not have the right, under Section 2.8 of the GPSA, to retain possession of the molds.

28. Kopp has refused to return the molds and lab equipment to Schott.

29. Kopp's refusal to return the molds and lab equipment to Schott has caused and threatens to cause Schott to suffer substantial disruption to its business and damage to its good will because it cannot supply its customers with molded lenses.

30. Kopp is wrongfully detaining and possessing the molds and lab equipment in plain contravention of the GPSA, and Schott is entitled to immediate and permanent possession of the molds and lab equipment.

31. Schott requires immediate possession of the molds and equipment, or it will be required to purchase replacements at a substantial cost so that it can provide them to the current manufacturer of the molded lenses.

32. Schott is concerned that Kopp is retaining possession of Schott's property and proprietary molds to allow it to compete for the lens business without making an investment in the necessary manufacturing equipment.

33. All conditions precedent to bringing this action have been performed, have occurred, or have been waived.

34. Schott has satisfied all of its obligations under the GPSA.

## COUNT I
### Replevin

35. Schott incorporates Paragraphs 1-33 of this Complaint as if fully set forth.

36. This claim is brought pursuant to Rule 64 of the Federal Rules of Civil Procedure and New York C.P.L.R. §§ 7101, *et seq.*

37. Pursuant to the GPSA, Schott owns and is lawfully entitled to the possession of the requested molds and lab equipment. Specifically, Sections 2.8 and 2.11 of the GPSA, in the absence of instructions from Schott to Kopp to scrap the molds and/or the lab equipment, Kopp is contractually obligated to return the molds and lab equipment to Schott.

38. Schott has never issued instructions to Kopp to scrap the molds or the lab equipment.

39. Kopp has refused to return the molds and lab equipment to Schott upon Schott's request.

40. The requested molds and lab equipment have not been taken for any tax, assessment, or fine levied by virtue of any law of any state against the property of Kopp, or against Schott, nor possessed under any security interest or seized under any lawful process or execution or attachment against the goods and chattels of Schott subject to that lawful process, nor held by virtue of any order for replevin against Schott.

41. Based upon the best knowledge, information, and belief of Schott, and in the absence of an inspection, the value of the molds and lab equipment collectively, for the purposes of setting a bond only, is approximately $150,000, excluding any value associated with immediate possession and proprietary information.

42. Based upon the best knowledge, information, and belief of Schott, the requested molds and lab equipment are located at Kopp's principal place of business at 2108 Palmer Street, Pittsburgh, Pennsylvania 15218.

43. Schott claims the value of the requested molds and lab equipment not delivered to the officer by virtue of the enforcement of an order of replevin.

44. Schott claims damages for the wrongful detention of the molds and lab equipment, and for the cost of replacing the goods, if they are not timely returned.

## PRAYER FOR RELIEF

WHEREFORE, Schott requests that:

    a. An order of replevin be entered in favor of Schott granting Schott immediate possession of the molds and lab equipment;

  b.  A declaratory judgment be entered in favor of Schott, declaring that Schott is the true owner of the molds and lab equipment and that Schott is entitled to immediate possession of the molds and lab equipment;

  c.  A temporary restraining order, preliminary injunction, or permanent injunction be entered in favor of Schott and against Kopp, restraining Kopp from continuing to deprive Schott of possession of the molds and lab equipment and from taking any steps to scrap, sell, transfer, use for its own purpose or otherwise encumber the molds and lab equipment in any way;

  d.  A judgment be entered in favor of Schott for the value of the molds and lab equipment if not delivered;

  e.  A judgment be entered in favor of Schott Kopp for damages sustained as a result of Kopp's wrongful detention of the molds and equipment in an amount to be determined at the time of trial or hearing;

  f.  Schott be granted such other and further relief as shall be just and equitable.

Dated: White Plains, New York
    July 19, 2017

                  Respectfully submitted,

                  *Thomas M. Smith*
                  ECKERT SEAMANS CHERIN & MELLOTT, LLC
                  Thomas M. Smith (TMS-9962)
                  10 Bank Street, Suite 700
                  White Plains, NY 10606
                  914-286-2807
                  *Attorneys for Plaintiff*